IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION FILE<br>NO. 4:10-CR-49-RLV-WEJ |
| ALVAND RICHARD WILLIAMS,<br>　　　　Defendant. | |

## NON-FINAL REPORT AND RECOMMENDATION

This matter is before the Court on defendant Alvand Richard Williams's Motion to Suppress Statements [11]. For the reasons stated below, the undersigned **REPORTS** that defendant's statements were given knowingly and voluntarily, and that his constitutional rights were not violated. Therefore, the undersigned **RECOMMENDS** that defendant's Motion be **DENIED**.

## I.   STATEMENT OF FACTS[1]

In June of 2010, FBI Task Force Officer Tim Deal posted an online ad, purportedly offering his 14-year-old stepdaughter for sex. (Gov't Resp. Br. [20] at 1.) Officer Deal received a response from a username later identified as belonging to Mr. Williams. (Id.) Through a series of emails and recorded telephone calls, Officer Deal arranged a meeting on July 5, 2010, at Elsie Holmes Nature Park in Ringgold, Georgia, where he and Mr. Williams (and an undercover officer posing as the stepdaughter) were to discuss future sexual encounters between defendant and the purported stepdaughter. (Id. at 1-2.) Defendant was arrested upon his appearance at that meeting and transported to the City of Rossville Police Department. (Id. at 2; Def.'s Br. Supp. [18] at 1.)

Detective David L. Scroggins of the Rossville Police Department and Special Agent Ken Hillman of the FBI interviewed defendant following his arrest.

---

[1] The parties stipulated to the relevant facts; therefore, no evidentiary hearing was necessary. The Government transcribed relevant portions of the video recording of defendant's statement, which the Court verified by watching that recording. Defendant did not file a reply brief or otherwise object to the Government's transcription. Accordingly, the Court adopts the Government's brief as an accurate representation of that statement. The Court also includes some facts from the parties' briefs to provide context, although those facts are not material to the issue before the Court.

Detective Scroggins began the interview as follows: "Since we brought you up here in handcuffs, we got some rules that we have to comply with . . . . I have got a form I am going to give you in just a second . . . but I always go over these verbally with everybody." (Gov't Ex. 1; Gov't Resp. Br. 3.) Detective Scroggins continued,

> The first thing is very much like Agent Hillman told you out at the scene, you don't have to talk to us. You absolutely have the right to remain silent, say nothing at all. We are not going to get angry if you don't, okay. And know that anything you do say can be used in court and other legal proceedings and we have some, some other areas, other than just trial we deal with. You understand that you have a right to talk to an attorney, and in fact have an attorney with you while we are talking, if that is what you would like to do. You understand that if you cannot afford an attorney and you decide you want one, whether that would be now or later on, the state is always obligated to appoint somebody to represent you. You need to understand that you never give up any of these rights, they're yours always. If you decided to talk to us you don't have to keep talking to us. You are the one that gets to decide when we quit.

(Gov't Resp. Br. 3-4.)

When asked whether he had any questions about those rights, Mr. Williams stated that he did not. Detective Scroggins then presented Mr. Williams a waiver of rights form. (Gov't Ex. 2 [20-2].) Mr. Williams initialed next to each statement of rights and signed the form. (Id.) On that form, defendant acknowledges that Detective Scroggins "told me that I was a suspect in this case," and informed him

3

of his legal rights, including that "Anything I do say might be used in court or other legal proceedings." (Id.) The form concludes, "Having these rights in mind, I now agree to discuss this matter with the investigating officers." (Id.) Mr. Williams made inculpatory statements during the ensuing questioning. (See Gov't Ex. 1.)

## II. ANALYSIS

The holding of Miranda v. Arizona, 384 U.S. 436 (1966), "is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. at 444. The Supreme Court explained as follows:

> As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

Id.

Defendant does not assert that his waiver of rights was not made voluntarily or intelligently.[2] Rather, defendant contends that "[t]he advisement of rights provided by the agents in this case was inadequate in that it failed to expressly state to the Defendant that his statements would be used <u>against him</u>." (Mot. Suppress at 2.) The Supreme Court in <u>Miranda</u> explained the "knowingly" aspect of the wavier as follows:

> The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system-that he is not in the presence of persons acting solely in his interest.

<u>Miranda</u>, 384 U.S. at 469.

Law enforcement need not provide <u>Miranda</u> warnings "in the exact form described in that decision." <u>Duckworth v. Eagan</u>, 492 U.S. 195, 202 (1989). For a reviewing court, therefore, "[t]he inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by <u>Miranda</u>." <u>Id.</u> (citing <u>California v.</u>

---

[2] Mr. Williams is a school teacher with "16+" years of education. (<u>See</u> Gov't Resp. Br. 11 (citing Gov't Exs. 1 & 2).)

Prysock, 453 U.S. 355, 361 (1981)) (internal punctuation omitted). The Government bears the burden of establishing a waiver of Miranda rights by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168 (1986).

Here, Detective Scroggins made defendant aware of the privilege to remain silent, and also that the consequence of forgoing such privilege was the use of any statements "in court and other legal proceedings." Further, the Court is confident that a defendant is "acutely aware . . . that he is not in the presence of persons acting solely in his interest" when he is placed under arrest and transported to the police station in handcuffs,[3] a point that Detective Scroggins emphasized at the outset of the interview. Moreover, both the verbal warnings and the written waiver form reasonably conveyed the Miranda rights to defendant. In other words, law enforcement "touched all of the bases required by Miranda." Duckworth, 492 U.S. at 203. Although neither the verbal warnings nor the waiver form included the words "against you," both made expressly clear to Mr. Williams that he was a suspect in a criminal investigation. Accordingly, the Court concludes that the

---

[3] Defendant does not argue otherwise. He merely asserts that the warning language is deficient as a matter of law.

6

Government complied with the requirements of Miranda, and that defendant voluntarily, knowingly, and intelligently waived his rights.

### III. CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that defendant's Motion to Suppress Statements [11] be **DENIED**.

**SO RECOMMENDED**, this 17th day of February, 2011.

_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

7